FILED

MAY 1 2 2003

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
BENTON OFFICE

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Civil No. 91-00578-JLF |
| NL INDUSTRIES, INC., et al., | ) |
| Defendants, | ) |
| and | ) |
| CITY OF GRANITE CITY, et al., | ) |
| Intervenor-Defendants. | ) |

CONSENT DECREE

301

## TABLE OF CONTENTS

I.      BACKGROUND . . . . . . . . . . . . . . . . . . . . 1

II.     JURISDICTION . . . . . . . . . . . . . . . . . . . 6

III.    PARTIES BOUND . . . . . . . . . . . . . . . . . . 6

IV.     DEFINITIONS . . . . . . . . . . . . . . . . . . . 7

V.      REIMBURSEMENT OF RESPONSE COSTS . . . . . . . . . 11

VI.     CIVIL PENALTY . . . . . . . . . . . . . . . . . . 14

VII.    STIPULATED PENALTIES . . . . . . . . . . . . . . 14

VIII.   COVENANT NOT TO SUE BY PLAINTIFF . . . . . . . . 16

IX.     COVENANT NOT TO SUE BY SETTLING DEFENDANT . . . . 19

X.      EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION . . . 20

XI.     ACCESS TO INFORMATION . . . . . . . . . . . . . . 22

XII.    RETENTION OF RECORDS . . . . . . . . . . . . . . 24

XIII.   NOTICES AND SUBMISSIONS . . . . . . . . . . . . . 25

XIV.    RETENTION OF JURISDICTION . . . . . . . . . . . . 26

XV.     INTEGRATION/APPENDIX . . . . . . . . . . . . . . 26

XVI.    LODGING AND OPPORTUNITY FOR PUBLIC COMMENT . . . . 27

XVII.   EFFECTIVE DATE . . . . . . . . . . . . . . . . . 27

XVIII.  SIGNATORIES/SERVICE . . . . . . . . . . . . . . . 27

## I.   BACKGROUND

A.   Plaintiff, the United States of America, on behalf of the
Administrator of the United States Environmental Protection
Agency ("EPA"), filed the Complaint in this action on July 31,
1991, against eleven (11) defendants, including NL Industries,
Inc. ("Settling Defendant"), pursuant to Sections 106 and 107 of
the Comprehensive Environmental Response, Compensation, and
Liability Act, as amended ("CERCLA"), 42 U.S.C. §§ 9606 and 9607.
B.   The Complaint filed by the United States in this action
seeks: (1) injunctive relief to compel defendants to undertake
remedial action at the NL Industries Superfund Site in Granite
City, Madison, and Venice, Illinois (the "Site," as defined in
Section IV, below) in accordance with an Administrative Order
issued by EPA pursuant to Section 106 of CERCLA, 42 U.S.C.
§ 9606; (2) recovery of costs which the United States has
incurred in responding to releases and threatened releases of
hazardous substances at the Site; (3) a declaration that
defendants will be liable for additional costs that may be
incurred by the United States in responding to releases or
threatened releases of hazardous substances at the Site; and,
(4) civil penalties and punitive damages for defendants' failure
to comply with the Administrative Order.
C.   Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA
placed the Site on the National Priorities List, set forth at 40
C.F.R. Part 300, Appendix B, by publication in the Federal
Register on June 10, 1986, 51 Fed. Reg. 21054.

- 1 -

On July 31, 1991, plaintiff filed suit, seeking both civil penalties and cost recovery under CERCLA Section 107(a), against the following defendants for their failure to comply with the UAO: NL Industries, Johnson Controls, Inc., AT&T, (now Lucent Technologies, Inc.), Exide Corporation, (now Exide Technologies, Inc.), Allied Signal, Inc., (now Allied Signal, Inc.), Gould, Inc., (now GNB Technology), General Battery Corporation, Southern Scrap Metal Processor, Inc., Ace Scrap Metal Processors, Inc., and St. Louis Lead Recyclers.

Under a case management order approved by this Court, the initial phase of the litigation focused on the defendants' challenge to the EPA remedy. Granite City, Illinois, intervened in the action, and filed a motion to restrain the EPA from implementing the remedy on the ground that the administrative record did not justify the cleanup of

---

2) Excavation of all unpaved, non-residential areas at the site where lead concentrations exceed 1000 ppm.

3) Consolidation of the separate waste piles with the Taracorp pile.

4) Construction of a cap over the Taracorp pile and a clay liner under the material added to the Taracorp pile

5) Development of contingency plans for possible air and groundwater contamination.

6) Removal of all drums at the site.

7) Installation of groundwater monitoring wells; monitoring of air and groundwater and; inspection and maintenance of the cap on the Taracorp pile

4

residential yards below 1,000 ppm.  The remedy was remanded to the EPA and the administrative record was supplemented on the issue of the appropriate cleanup standard. The EPA then required excavation of soils containing at least 500 ppm for lead in residential soils at the Site.

In the Spring of 1996, the EPA began to implement that part of the remedy requiring excavation of residential soil at levels above 500 ppm.  Granite City renewed its motion for a temporary restraining order.  This Court denied Granite City's motion for a temporary restraining order holding that Section 113(h)(4) of CERCLA divested it of jurisdiction to review the EPA's remedy and that Granite City had failed to show any danger of irreparable harm.  Thereafter, the EPA proceeded with all aspects of the remedy and in July, 1998, allowed certain defendants to take over completing the remediation.

Plaintiff has reached agreements with all defendants except NL Industries, Ace Scrap Metal Processors, Inc  and St. Louis Lead Recyclers.  The proposed Consent Decree would resolve plaintiff's claims against NL Industries.  Plaintiff is still attempting to resolve its claims against Ace Scrap Metal Processors, Inc. and St. Louis Lead Recyclers.

On October 16, 1995, the Court entered a consent decree reached between plaintiff and Southern Scrap Metal Processor, Inc. (Doc. 204).  On March 18, 2003, the Court entered a consent decree reached between plaintiff and Johnson Controls, Inc., AT&T, (now Lucent Technologies, Inc.), Exide Corporation, (now Exide Technologies, Inc ), Allied Signal, Inc , (now Allied Signal, Inc.), Gould, Inc., (now GNB Technology), and

5

In the DD/ESD, EPA reaffirmed its decision to require excavation of residential soils containing at least 500 ppm lead.  In addition, EPA modified the remedy by adding a requirement that the contaminated ground water at the former NL facility be contained because additional testing had found contamination not identified in the RI/FS.

L.   EPA has reached a tentative settlement, subject to public comment, with a group of six generator defendants ("Settling Generator Defendants"), under which the Settling Generator Defendants have agreed to complete implementation of the remedy, reimburse a portion of the response costs previously incurred by the United States in connection with the Site, make payment of oversight costs incurred in connection with the remedy selected in the ROD and DD/ESD for the Site, and resolve claims for alleged violations of the UAO by paying a civil penalty of $400,000 and completing a supplemental environmental project consisting of a $2,000,000 lead paint abatement program in Madison County ("Generator Consent Decree").

M.   On September 19, 2000, EPA issued an ESD changing provisions of the ground water remedy described in the DD/ESD.  Based on information concerning the limited extent of ground water contamination at the Site and the lack of private drinking water wells in the vicinity of the Site, the September 19, 2000 ESD eliminated the requirement for installation of a groundwater containment system at this time; instead, the ESD provided for continued monitoring of ground water at the Site and for

- 4 -

development and implementation of a contingency plan, if lead concentrations exceed applicable standards at perimeter wells at the Site.

N.     This Consent Decree is made and entered into by and between Plaintiff, the United States of America, and Settling Defendant. The purpose of this Consent Decree is: (1) to provide for Settling Defendant's payment of its fair share of response costs incurred or to be incurred by any person, entity, governmental unit, or party, including the Settling Generator Defendants, in responding to the release and threatened release of hazardous substances at the Site; (2) to provide for payment of a civil penalty by Settling Defendant for failure to comply with EPA's Administrative Order, dated November 27, 1990; (3) to resolve claims against the Settling Defendant, as set forth herein; and (4) to provide Settling Defendant protection against contribution claims by third parties relating to the Site, as set forth herein.

O.     The Settling Defendant filed an answer and affirmative defenses to the Complaint denying any and all liability.  The Settling Defendant does not admit any liability to the Plaintiff arising out of the transactions or occurrences alleged in the Complaint, nor does it acknowledge that the release or threatened release of hazardous substance(s) at or from the Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment.  The participation of the Settling Defendant in this Consent Decree should not be considered an

- 5 -

admission of liability for any purpose, and the fact of such participation by the Settling Defendant shall not be admissible against such Settling Defendant at any judicial or administrative proceeding, except in an action or proceeding brought by the United States to enforce the terms of this Consent Decree.

P.    The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.   JURISDICTION

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. §§ 9606, 9607 and 9613(b). This Court also has personal jurisdiction over the Settling Defendant. Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendant waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this District.  Settling Defendant shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.   PARTIES BOUND

2.    This Consent Decree applies to and is binding upon the United States, and upon Settling Defendant and its successors and

- 6 -

assigns.  Any change in ownership or corporate status of Settling
Defendant, including but not limited to, any transfer of assets
or real or personal property, shall in no way alter Settling
Defendant's responsibilities under this Consent Decree.

IV.   DEFINITIONS

3.   Unless otherwise expressly provided herein, terms used
in this Consent Decree which are defined in CERCLA or in
regulations promulgated under CERCLA shall have the meaning
assigned to them in CERCLA or in such regulations.  Whenever
terms listed below are used in this Consent Decree or in any
appendix attached hereto, and incorporated hereunder, the
following definitions shall apply:

a.   "Administrative Order" means the Administrative
Order EPA issued to Settling Defendant and other entities not a
party to this settlement on November 27, 1990, pursuant to
Section 106 of CERCLA, 42 U.S.C. § 9606.

b.   "CERCLA" shall mean the Comprehensive Environmental
Response, Compensation, and Liability Act of 1980, as amended, 42
U.S.C. § 9601 et seq.

c.   "Certification of Completion" shall mean EPA's
certification pursuant to Section 122(f)(3) of CERCLA, 42 U.S.C.
§ 9622(f)(3), that remedial action has been completed at the Site
in accordance with the requirements of the NCP, the ROD and
DD/ESD, and the Generator Consent Decree requiring the
performance of remedial action at the Site.

- 7 -

d.   "Consent Decree" or "Decree" shall mean this Consent Decree and any appendix attached hereto.  In the event of conflict between this Decree and any appendix, this Decree shall control.

e.   "Day" shall mean a calendar day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal Holiday, the period shall run until the close of business of the next working day.

f.   "Decision Document/Explanation of Significant Differences" or "DD/ESD" shall mean the document supplementing the record of decision signed by the Administrator on September 29, 1995.

g.   "DOJ" shall mean the United States Department of Justice and any successor departments, agencies or instrumentalities of the United States.

h.   "EPA" shall mean the United States Environmental Protection Agency and any successor departments, agencies or instrumentalities of the United States.

i.   "EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

j.   "Future Response Costs" shall mean all costs, including but not limited to direct and indirect costs, for response actions relating to the Site incurred by EPA (including all such costs incurred pursuant to interagency agreements between EPA and other federal agencies), the Agency for Toxic

- 8 -

Substances and Disease Registry ("ATSDR"), and DOJ on behalf of
EPA and ATSDR that EPA and DOJ on behalf of EPA will incur for
response actions relating to the Site after October 7, 1999, and
includes any such costs incurred after entry of the Consent
Decree.

      k.  "Generator Consent Decree" shall mean the Consent
Decree to resolve claims of the United States against the
Settling Generator Defendants, and any appendix attached thereto.

      l.  "Interest" shall mean interest at the current rate
specified for interest on investments of the Hazardous Substance
Superfund established by 26 U.S.C. § 9507, compounded annually on
October 1 of each year, in accordance with 42 U.S.C. § 9607(a).

      m.  "National Contingency Plan" or "NCP" shall mean the
National Oil and Hazardous Substance Pollution Contingency Plan
promulgated pursuant to Section 105 of CERCLA 42 U.S.C. § 9605,
codified at 40 C.F.R. Part 300, including but not limited to any
amendments thereto.

      n.  "Paragraph" shall mean a portion of this Consent
Decree identified by an arabic numeral or an upper or lower case
letter.

      o.  "Parties" shall mean the United States and the
Settling Defendant.

      p.  "Past Response Costs" shall mean all costs,
including, but not limited to, direct and indirect costs, for
response actions relating to the Site incurred by EPA (including
all such costs incurred pursuant to interagency agreements

- 9 -

between EPA and other federal agencies), the Agency for Toxic Substances and Disease Registry ("ATSDR"), and DOJ on behalf of EPA and ATSDR through the date of entry of this decree, plus accrued Interest on all such costs through October 7, 1999.

q.   "Plaintiff" shall mean the United States.

r.   "Record of Decision" or "ROD" shall mean the Record of Decision signed by the Regional Administrator for Region V of EPA on March 30, 1990, for the Site.

s.   "Remedial Action" shall mean the response actions at the Site set forth in the March 30, 1990, Record of Decision and the September 29, 1995, DD/ESD.

t.   "Section" shall mean a portion of this Consent Decree identified by a roman numeral.

u.   "Settling Defendant" shall mean NL Industries, Inc.

v.   "Settling Generator Defendants" shall mean Johnson Controls, Inc., Lucent Technologies, Inc., Exide Corporation, Allied Signal, Inc., GNB Technologies, Inc., and General Battery Corporation.

w.   "Site" shall mean the NL Industries/Taracorp Superfund Site located in Granite City, Madison, and Venice, Illinois, as depicted in Appendix A of this Consent Decree, and additional residential areas where lead has come to be located in concentrations greater than 500 parts per million as a result of smelting operations conducted at the former lead smelter located at 16th Street and Cleveland Boulevard, Granite City, Illinois, as identified in the remedial design.  The Site includes the

- 10 -

property, not including any buildings, currently owned or
operated by Taracorp and Metalico, Inc. located at 16th Street
and Cleveland Boulevard, Granite City, Illinois; properties, not
including buildings, adjacent to the Metallico property,
currently owned or operated by the First Granite City National
Bank Trust No. 454 (now known as the Magna Trust Company), Rich
Oil Company, and BV&G Transport Company (formerly Tri-City
Trucking); approximately 100 square blocks of residential
property as depicted in Appendix A; and certain fill locations in
Granite City, Madison, and Venice, Illinois and adjacent areas,
as depicted in Appendix A.

     x.   "State" shall mean the State of Illinois.

     y.   "United States" shall mean the United States of
America, including it departments, agencies and
instrumentalities.

## V.   REIMBURSEMENT

    4.   a. Within 31 days of the date this Consent Decree is
entered by the Court, Settling Defendant shall pay to the EPA
Hazardous Substance Superfund the sum of $29,780,000 in the
manner specified in paragraph 4.d, below; provided, however, that
if any timely appeal of the Court's order entering this Consent
Decree is filed, then, within 40 days after entry of the Consent
Decree, Settling Defendant shall pay the sum of $29,780,000 into
an interest-bearing escrow account, pending resolution of such
appeal(s).  Upon a final decision affirming the order entering
this Consent Decree, the proceeds of the escrow account,

- 11 -

including accrued Interest, shall be paid to the Hazardous
Substance Superfund, in the manner specified in paragraph 4.d,
below; provided, however, that if the escrow account interest
rate exceeds the rate specified for interest on investments of
the Hazardous Substance Superfund established by 26 U.S.C.
§ 9507, then the amount of any such excess interest (i.e.,
accrued interest in excess of the amount of Interest that accrued
at the rate specified for interest on investments of the
Hazardous Substance Superfund) shall be paid to Settling
Defendant.  Upon a final decision reversing the order entering
this Consent Decree, all proceeds of the escrow account shall be
paid to Settling Defendant.  If Settling Defendant does not pay
the full amount specified in this Paragraph 4.a to the Hazardous
Substance Superfund or the interest-bearing escrow account, as
applicable, when due, Settling Defendant shall also pay Interest
on the unpaid balance.  For purposes of this paragraph a decision
shall be considered "final" only after exhaustion of all
opportunities for appellate review or expiration of the time for
filing further appeals.  Interest shall accrue on the unpaid
balance beginning on the thirty-first day after entry of this
Consent Decree and continuing until the entire principal amount
has been paid.

          b.    In addition to the above payments, Settling
Defendant shall also pay to the EPA Hazardous Substance Superfund
50% of those unresolved costs ($1,420,000) currently subject to
an audit (hereinafter "Costs Subject to Audit") that are deemed

- 12 -

proper and correct by the audit and approved by EPA upon EPA report of the audit results and a bill requiring payment. The amount of Costs Subject to Audit payable by Settling Defendant shall in no event be more than 50% of $1,420,000. Settling Defendant shall make payment in the manner specified in Paragraph 4.d, below, within 60 days of Settling Defendant's receipt of the bill requiring payment. In the event that the payment required by this Paragraph 4.b. is not made within 60 days of receipt of a bill requiring payment, Settling Defendant shall pay Interest on the unpaid balance. Interest on the Costs Subject to Audit shall begin to accrue on the date of the bill, and shall continue to accrue until payment in full of all amounts due pursuant to this Paragraph 4.b.

c. Payment of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiff by virtue of Settling Defendant's failure to make timely payments under this Section.

d. All payments to the Hazardous Substances Superfund required pursuant to Paragraph 4.a. and 4.b. shall be made by FedWire Electronic Funds Transfer ("EFT" or wire transfer) to the DOJ account in accordance with current electronic funds transfer procedures, referencing USAO File Number 1991V00303, the EPA Region and Site/Spill ID Number 05W8, and DOJ Case Number 90-11-3-608/3. Payments required by Paragraph 4.a. and 4.b. shall be made in accordance with instructions provided to Settling Defendant by the Financial Litigation Unit of the United States

Attorney's Office for the Southern District of Illinois following
lodging of the Consent Decree.  Any payments received by the
Department of Justice after 4:00 P.M. (Eastern Time) will be
credited on the next business day. Settling Defendant shall send
notice that such payment has been made to the United States as
specified in Section XIII (Notices and Submissions) and to:

> Financial Management Officer,
> U.S. Environmental Protection Agency - Region 5
> Mail Code MF-10J
> 77 West Jackson Boulevard
> Chicago, IL 60604.

## VI.   CIVIL PENALTY

5.    Within 31 days of the date this Consent Decree is
entered by the Court, or, if appeal(s) have been taken of the
Court's order entering this Consent Decree, within 30 days of the
resolution of such appeal(s), Settling Defendant shall pay to the
EPA Hazardous Substance Superfund a civil penalty of $1,000,000
for failure to comply with the Administrative Order, in
accordance with instructions to be provided by the Financial
Litigation Unit of the United States Attorney's Office for the
Southern District of Illinois.  Settling Defendant shall send
notice that such payment has been made to the United States as
specified in Section XIII (Notices and Submissions).

## VII.   STIPULATED PENALTY

6.    Interest on Late Penalty Payments. In the event that
any payment(s) required by Section VI (Civil Penalty), or Section
VII, Paragraph 7 (Stipulated Penalty), are not received when due,

- 14 -

Interest shall continue to accrue on the unpaid balance through the date of payment.

      7.    Stipulated Penalty.

      a.    If any amounts due to EPA under this Consent Decree are not paid by the required date, Settling Defendant shall pay to EPA a stipulated penalty, in addition to the Interest required by Paragraphs 4 and 6, of $5,000 per violation per day that such payment is late for the first 14 days of such noncompliance, and $15,000 per violation per day that such payment is late thereafter.

      b. Stipulated penalties are due and payable within 30 days of the date of the demand for payment of the penalties by EPA.  All payments to EPA under this Paragraph shall be made by certified or cashier's check made payable to "EPA Hazardous Substance Superfund" and shall be sent to:

                  U.S. Environmental Protection Agency - Region 5
                  Program Accounting and Analysis Branch
                  P.O. Box 70753
                  Chicago, IL 60673

All payments shall indicate that the payment is for stipulated penalties and shall reference the name and address of the party making payment, the EPA Region and Site Spill ID Number 05W8, USAO File Number 1991V00303, and DOJ Case Number 90-11-3-608/3. Copies of check(s) paid pursuant to this Paragraph, and any accompanying transmittal letter(s), shall be sent to EPA and DOJ as provided in Section XIII (Notices and Submissions) and to:

                  Financial Management Officer,
                  U.S. Environmental Protection Agency - Region 5
                  Mail Code MF-10J
                  77 West Jackson Boulevard
                  Chicago, IL 60604.

c.   Penalties shall accrue as provided in this Paragraph regardless of whether EPA has notified Settling Defendant of the violation or made a demand for payment, but need only be paid upon demand.  All penalties shall begin to accrue on the day after complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of correction of the noncompliance or completion of the activity. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

8.   If the United States brings an action to enforce this Consent Decree, Settling Defendant shall reimburse the United States for all costs of such action, including but not limited to costs of attorney time.

9.   Payments made under Paragraphs 7 and 8 shall be in addition to any other remedies or sanctions available to Plaintiff by virtue of Settling Defendant's failure to comply with the requirements of this Consent Decree.

### VIII.   COVENANT NOT TO SUE BY PLAINTIFF

10.   In consideration of the actions that will be performed and the payments that will be made by the Settling Defendant under the terms of the Consent Decree, and except as specifically provided in Paragraphs 11, 12, and 14, the United States covenants not to sue or to take administrative action against Settling Defendant pursuant to Sections 106 and 107(a) of CERCLA and Section 7003 of RCRA relating to the Site.  Except with respect to future liability, these covenants not to sue shall

- 16 -

take effect upon the receipt by EPA of the payments required by Section V.  With respect to future liability, these covenants not to sue shall take effect upon Certification of Completion of the Remedial Action by EPA.  These covenants not to sue are conditioned upon the complete and satisfactory performance by Settling Defendant of its obligations under this Consent Decree. These covenants not to sue extend only to the Settling Defendant and do not extend to any other person.

     11.   United States' Pre-certification reservations. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendant (1) to perform further response actions relating to the Site or (2) to reimburse the United States for additional costs of response if, prior to Certification of Completion of the Remedial Action:

               (i)   conditions at the Site, previously unknown to EPA, are discovered, or

               (ii) information, previously unknown to EPA, is received, in whole or in part,

and these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action is not protective of human health or the environment.

     12.   United States' Post-certification reservations. Notwithstanding any other provision of this Consent Decree, the

- 17 -

United States reserves, and this Consent Decree is without
prejudice to, the right to institute proceedings in this action
or in a new action, or to issue an administrative order seeking
to compel Settling Defendant (1) to perform further response
actions relating to the Site or (2) to reimburse the United
States for additional costs of response if, subsequent to
certification of completion of the Remedial Action:

> (i)   conditions at the Site, previously unknown to EPA,
>       are discovered, or
>
> (ii)  information, previously unknown to EPA, is
>       received, in whole or in part,

and these previously unknown conditions or this information
together with other relevant information indicate that the
Remedial Action is not protective of human health or the
environment.

13.   For purposes of Paragraph 11, the information and the
conditions known to EPA shall include only that information and
those conditions known to EPA as of the date the DD/ESD was
signed and which are set forth in the ROD, the DD/ESD for the
Site or the administrative record supporting the ROD and DD/ESD.
For purposes of Paragraph 12, the information and the conditions
known to EPA shall include only that information and those
conditions known to EPA as of the date of Certification of
Completion of the Remedial Action and set forth in the ROD, the
DD/ESD, the administrative record supporting the ROD, the post-
ROD administrative record, or in any information received by EPA

- 18 -

pursuant to the requirements of the Generator Consent Decree
prior to Certification of Completion of the Remedial Action.

14.   General reservations of rights.   The covenants not to
sue set forth above do not pertain to any matters other than
those expressly specified in Paragraph 10.   The United States
reserves, and this Consent Decree is without prejudice to, all
rights against Settling Defendant with respect to all other
matters, including but not limited to, the following:

(1)   claims based on a failure by Settling Defendant to
meet a requirement of this Consent Decree;

(2)   liability arising from the past, present, or
future disposal, release, or threat of release of Waste
Materials outside of the Site;

(3)   liability for damages for injury to, destruction
of, or loss of natural resources;

(4)   liability for response costs other than Past
Response Costs or Future Response Costs as defined herein;

(5)   criminal liability; and

(6)   liability, if any, for violations of federal or
state law which occur during or after implementation of the
Remedial Action.

IX.   COVENANTS BY SETTLING DEFENDANT

15.   Settling Defendant hereby covenants not to sue and
agrees not to assert any claims or causes of action against the
United States with respect to the Site or this Consent Decree,
including, but not limited to, any direct or indirect claim for

- 19 -

reimbursement from the Hazardous Substance Superfund (established
pursuant to the Internal Revenue Code, 26 U.S.C. § 9507), under
CERCLA §§ 106(b)(2), 107, 111, 112, or 113, or any other
provision of law, any claim against the United States, including
any department, agency, or instrumentality of the United States
pursuant to CERCLA Sections 107 and 113 related to the Past
Response Costs or Future Response Costs, or any claims arising
out of response activities at the Site.  Nothing in this Consent
Decree shall be deemed to constitute preauthorization of a claim
within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or
40 C.F.R. § 300.700(d).

X.  EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION

16.  Nothing in this Consent Decree shall be construed to
create any rights in, or grant any cause of action to, any person
not a Party to this Consent Decree.  Each of the Parties
expressly reserves any and all rights (including, but not limited
to, any right to contribution), defenses, claims, demands, and
causes of action which each Party may have with respect to any
matter, transaction, or occurrence relating in any way to the
Site against any person not a Party hereto.

17.  The Parties agree, and by entering this Consent Decree
this Court finds, that Settling Defendant is entitled, as of the
effective date of this Consent Decree, to protection from
contribution actions or claims as provided by Section 113(f)(2)
of CERCLA, 42 U.S.C. § 9613(f)(2), for "matters addressed" in
this Consent Decree.  The "matters addressed" in this Consent

- 20 -

Decree are response costs incurred by any person, entity, governmental unit, or party, including the Settling Generator Defendants, relating to the Site, as well as response actions taken or to be taken, and response costs to be incurred, by any person, entity, governmental unit, or party, including Settling Generator Defendants, in connection with implementation of the Remedial Action.

18.   Settling Defendant agrees that, with respect to any suit or claim for contribution brought by it for matters related to this Consent Decree, it will notify EPA and DOJ in writing no later than 60 days prior to the initiation of such suit or claim. Settling Defendant also agrees that, with respect to any suit or claim for contribution brought against it for matters related to this Consent Decree, it will notify EPA and DOJ in writing within 10 days of service of the complaint or claim upon it.   In addition, Settling Defendant shall notify EPA and DOJ within 10 days of service or receipt of any Motion for Summary Judgment, and within 10 days of receipt of any order from a court setting a case for trial, for matters related to this Consent Decree.

19.   In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other relief relating to the Site, Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the

- 21 -

United States in the subsequent proceeding were or should have
been brought in the instant case; provided, however, that nothing
in this Paragraph affects the enforceability of the Covenant Not
to Sue by Plaintiff set forth in Section VIII.

## XI.  ACCESS TO INFORMATION

20.  Settling Defendant shall provide to EPA, upon request,
and after reasonable notice, copies of all non-privileged
documents and information within its possession or control or
that of its contractors or agents relating to activities at the
Site, including, but not limited to, sampling, analysis, chain of
custody records, manifests, trucking logs, receipts, reports,
sample traffic routing, correspondence, or other documents or
information related to the Site.

21.  Confidential Business Information and Privileged
Documents.

a.   Settling Defendant may assert business
confidentiality claims covering part or all of the documents or
information submitted to Plaintiff under this Consent Decree to
the extent permitted by and in accordance with Section 104(e)(7)
of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. 2.203(b).
Documents or information determined to be confidential by EPA
will be accorded the protection specified in 40 C.F.R. Part 2,
Subpart B.  If no claim of confidentiality accompanies documents
or information when they are submitted to EPA, or if EPA has
notified Settling Defendant that the documents or information are
not confidential under the standards of Section 104(e)(7) of

- 22 -

CERCLA, the public may be given access to such documents or information without further notice to Settling Defendant.

      b.  Settling Defendant may assert that certain documents, records or other information are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Settling Defendant asserts such a privilege in lieu of providing documents, it shall provide Plaintiff with the following:  1) the title of the document, record, or information; 2) the date of the document, record, or information; 3) the name and title of the author of the document, record, or information; 4) the name and title of each addressee and recipient; 5) a description of the subject of the document, record, or information; and 6) the privilege asserted.  However, no documents, reports or other information created or generated pursuant to the requirements of this consent decree with the United States shall be withheld on the grounds that they are privileged.  If a claim of privilege applies only to a portion of a document, the document shall be provided to Plaintiff in redacted form to mask the privileged information only.  Settling Defendant shall retain all records and documents that it claims to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in the Settling Defendant's favor.

      22.  No claim of confidentiality shall be made with respect to any data, including but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or

engineering data, or any other documents or information
evidencing conditions at or around the Site.

## XII.   RETENTION OF RECORDS

23.   Until 7 years after the entry of this Consent Decree,
Settling Defendant shall preserve and retain all records and
documents now in its possession or control, or which come into
its possession or control, that relate in any manner to response
actions taken at the Site or the liability of any person for
response actions conducted and to be conducted at the Site,
regardless of any corporate retention policy to the contrary.

24.   After the conclusion of the document retention period
in the preceding paragraph, Settling Defendant shall notify EPA
and DOJ at least 90 days prior to the destruction of any such
records or documents, and, upon request by EPA or DOJ, Settling
Defendant shall deliver any such records or documents to EPA.
Settling Defendant may assert that certain documents, records, or
other information are privileged under the attorney-client
privilege or any other privilege recognized by federal law.   If
Settling Defendant asserts such a privilege, it shall provide
Plaintiff with the following:  1) the title of the document,
record, or information; 2) the date of the document, record, or
information; 3) the name and title of the author of the document,
record, or information; 4) the name and title of each addressee
and recipient; 5) a description of the subject of the document,
record, or information; and 6) the privilege asserted.  However,
no documents, reports, or other information created or generated

- 24 -

pursuant to the requirements of this or any other consent decree
with the United States shall be withheld on the grounds that they
are privileged.  If a claim of privilege applies only to a
portion of a document, the document shall be provided to
Plaintiff in redacted form to mask the privileged information
only.  Settling Defendant shall retain all records and documents
that it claims to be privileged until the United States has had a
reasonable opportunity to dispute the privilege claim and any
such dispute has been resolved in the Settling Defendant's favor.
Any dispute concerning a claim of privilege shall be resolved
pursuant to the Federal Rules of Civil Procedure and applicable
law governing the privilege asserted.

XIII.  NOTICES AND SUBMISSIONS

25.  Whenever, under the terms of this Consent Decree,
notice is required to be given or a document is required to be
sent by one party to another, it shall be directed to the
individuals at the addresses specified below, unless those
individuals or their successors give notice of a change to the
other Parties in writing.  Written notice as specified herein
shall constitute complete satisfaction of any written notice
requirement of the Consent Decree with respect to the United
States, EPA, DOJ, and Settling Defendant, respectively.

As to the United States:

As to DOJ:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice (DJ # 90-11-3-608/3)
P.O. Box 7611
Washington, D.C.  20044-7611

As to EPA:

Larry L. Johnson
Associate Regional Counsel
United States Environmental Protection Agency
Region V
77 West Jackson Blvd.
Chicago, IL 60604

Brad Bradley
EPA Project Coordinator
United States Environmental Protection Agency
Region V
77 West Jackson Blvd.
Chicago, IL 60604

As to Settling Defendant:

David Garten
NL Industries, Inc.
Vice President and General Counsel
16825 North Chase Drive
Houston, TX 77210

Marcus Martin
Highland Environmental Management
1630 30'ᵗʰ Street, Suite 600
Boulder, CO 80301

## XIV.  RETENTION OF JURISDICTION

26.  This Court shall retain jurisdiction over this matter
for the purpose of interpreting and enforcing the terms of this
Consent Decree.

## XV.  INTEGRATION/APPENDIX

27.  This Consent Decree and its appendix constitute the
final, complete and exclusive agreement and understanding among
the Parties with respect to the settlement embodied in this
Consent Decree.  The Parties acknowledge that there are no
representations, agreements or understandings relating to the
settlement other than those expressly contained in this Consent

- 26 -

Decree. The following appendix is attached to and incorporated into this Consent Decree: "Appendix A" is the map of the Site.

## XVI. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

28. This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that this Consent Decree is inappropriate, improper, or inadequate. Settling Defendant consents to the entry of this Consent Decree without further notice.

29. If for any reason this Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XVII. EFFECTIVE DATE

30. The effective date of this Consent Decree shall be the date upon which it is entered by the Court.

## XVIII. SIGNATORIES/SERVICE

31. Each undersigned representative of the Settling Defendant to this Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the United States Department of Justice certifies that he or she is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally such Party to this document.

- 27 -

32.  Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States has notified Settling Defendant in writing that it no longer supports entry of the Consent Decree.

33.  Settling Defendant shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree.  Settling Defendant hereby agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to, service of a summons.

SO ORDERED THIS  _12th_  day of  _May_ ,  _2003_ .

_____
UNITED STATES DISTRICT JUDGE

- 28 -

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States v. NL Industries, Inc., et al.</u>, Civil No. 91-00578-JLF, relating to the NL Industries Superfund Site.

FOR THE UNITED STATES OF AMERICA

Date: *11. 7.02*

_____
THOMAS L. SANSONETTI
Assistant Attorney General
Environment and Natural Resources
    Division
U.S. Department of Justice


_____
STEVEN J. WILLEY
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources
Division                    U.S.
Department of Justice
P.O. Box 7611
Washington, DC  20044-7611


MIRIAM F. MIQUELON
United States Attorney
Southern District of Illinois

_____
WILLIAM E. COONAN
Assistant United States Attorney
Nine Executive Drive
Suite 300
Fairview Heights, IL 62208
(618) 628-3714

- 29 -

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States v. NL Industries, Inc., et al.</u>, Civil No. 91-00578-JLF, relating to the NL Industries Superfund Site.


WILLIAM E. MUNO
Director, Superfund Division
United States Environmental
Protection Agency
   Region V
77 West Jackson Blvd.
Chicago, IL 60604


LARRY L. JOHNSON
Assistant Regional Counsel

United States Environmental
Protection Agency
   Region V
77 West Jackson Blvd.
Chicago, IL 60604

- 30 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States v. NL Industries, Inc., et al.</u>, Civil No. 91-00578-JLF, relating to the NL Industries Superfund Site.

FOR DEFENDANT NL INDUSTRIES, INC.

Date: 7/31/02

David B. Garten
Vice President, Secretary
and General Counsel

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name:       Marcus Martin

Title:

Address:    Highland Environmental Management

            1630 30$^{rr}$ Street, Suite 600

            Boulder, CO 80301

- 31 -



APPENDIX A
Site Map



AREA OF DETAIL

NOTE: Drawing taken from U.S.G.S. — Granite City, IL—MO and Monks Mound, IL Quadrangles dated 1982 & 1974.

**LEGEND**

■ REMOTE FILL AREAS

■ INDUSTRIAL AREAS

▨ RESIDENTIAL AREAS   ▨ BUFFER ZONE RESIDENTIAL AREAS

1. NUMERALS DENOTE RING NUMBERS

SPACING BETWEEN CIRCLES IS 1/8 OF A MILE

SCALE
0    2000    4000
FEET

NL/TARACORP SUPERFUND SITE
SUPPLEMENTAL INVESTIGATION

**Woodward–Clyde Consultants**
Engineering & sciences applied to the earth & its environment

Site Plan South

PROJECT NO
C3M11Q

FIG NO
1–2

DRN. BY. kdw  7/23/93
DSGN BY
CHKD BY