UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NL INDUSTRIES, INC., et al. | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | Case No. 91-CV-578-JLF |
| CITY OF GRANITE CITY, ILLINOIS, | ) | |
| LAFAYETTE H. HOCHULI, and | ) | |
| DANIEL M. McDOWELL, | ) | |
| | ) | |
| Intervenor-Defendants. | ) | |
| | ) | |
| HONEYWELL INTERNATIONAL, INC., | ) | |
| JOHNSON CONTROLS, INC., and | ) | |
| LUCENT TECHNOLOGIES, INC., | ) | |
| | ) | |
| Crossclaim and | ) | |
| Third Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| A & W BATTERY, et al. | ) | |
| | ) | |
| Third Party Defendants. | ) | |

MEMORANDUM AND ORDER

Before the Court are motions to determine the applicability of the Superfund

Recycling Equity Act (SREA) filed by A. Miller & Company, (Doc. 601), Bell City Battery,

(Doc. 602), and Nikko Materials USA, Inc., (Doc. 611).  Also before the Court is a motion

for summary judgment based on SREA and a motion for a hearing filed by Alter Company,

Ace Battery Incorporated, Rose Rosen & the Estate of Albert Rosen, and Shanke Metals, Inc.

(Docs. 607,608).   Honeywell International Inc., Johnson Controls, Inc., and Lucent

Technologies, Inc., have filed a response, (Doc. 613), and movants have filed replies (Docs. 618, 619).  These motions are discussed below.

## I.      Background.

The NL Industries/Taracorp Superfund Site, (the "Site"), occupies roughly 16 acres in Granite City, Illinois, that were previously the location of a battery recycling facility and secondary lead smelter from 1903 to 1983.  Also included in the site are approximately 55 square blocks of residential property surrounding the smelter, as well as certain fill locations in Granite City, Madison, and Venice, Illinois.  The smelter was owned by NL Industries ("NL") from 1928 until August of 1979, when NL sold the plant to Taracorp Industries, Inc.  Battery recycling operations began at the site in the 1950's. As a result of the smelting and battery recycling operations, there was an estimated 250,000-ton waste pile of material on the site containing antimony, arsenic, barium, cadmium, chromium, lead, mercury, nickel, and zinc (the "Taracorp Pile").

On July 31, 1991, the United States filed suit, seeking both civil penalties and cost recovery under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, (CERCLA), 42 U.S.C. § 9601, et seq.  The United States initiated this action against NL Industries and the nine hazardous waste generators:  Johnson Controls, Inc., AT&T, (now Lucent Technologies, Inc.), Exide Corporation, Allied Signal, Inc., (now Honeywell International, Inc.), Gould, Inc., (GNB Technology), General Battery Corporation, Southern Scrap Iron & Metal Company, Inc., Ace Scrap Metal Processors, Inc., and St. Louis Lead Recyclers.

On February 21, 1992, the Court entered its first case management order which stayed all third-party claims and all discovery concerning liability, penalties or damages (Doc. 78). The United States and Southern Scrap Iron & Metal Company, Inc. reached an agreement, and this Court entered their consent decree on October 16, 1995 (Doc. 204).

On November 9, 1999, the United States reached an agreement with Johnson Controls, Inc., Lucent Technologies, Inc., Exide Corporation, Allied Signal, Inc., (now Honeywell International, Inc.), GNB Technology, and General Battery Corporation, (i.e., the Settling Defendants), and lodged a consent decree with the Court (Doc. 251). By way of background, Section XXXIV of this consent decree provides that if the United States enters into settlement with "*de minimis*" parties, the United States will make the proceeds of such settlement available to the Settling Defendants. As a result, in their public comment, the Settling Defendants asked the United States to renegotiate the Settling Defendants' commitment to pay $8,970,000 of the United States' past response costs. Specifically, the Settling Defendants argued that after the parties signed the proposed consent decree, Congress passed the Superfund Recycling Equities Act, (SREA), Pub. L. No. 106-113, 113 Stat. 1536, 1501A-599 (1999), (codified at 42 U.S.C. § 9627) (2004), which exempts certain scrap metal and lead acid battery transactions from CERCLA liability. As such, Settling Defendants argued that SREA may affect the proposed consent decree by making it more difficult for the United States to complete settlements with *de minimis* parties and to maintain actions against "recalcitrant" parties, thereby reducing the amount of money that Settling Defendants will receive under Section XXXIV of the proposed consent decree.

When addressing this argument, the Court noted that SREA amends CERCLA, in part, by exempting from liability many persons who arrange for the recycling of certain materials, including spent batteries.  The Court also found, however, that SREA does not apply to this case.  Specifically, Section 127(i) of SREA explicitly provides that the new exemptions "shall not affect any . . . pending judicial action initiated by the United States prior to enactment . . ." (Doc. 294, p.12).  The Court further noted that a civil "action" includes "the entirety of a civil proceeding, which necessarily includes any third-party claims."  Having so concluded, on March 20, 2003, the Court entered the consent decree between the United States and the Settling Defendants (Doc. 294).

On December 19, 2002, the United States reached a final agreement with NL Industries and lodged a consent decree with the Court (Doc. 287).  On May 12, 2003, this Court entered this consent decree (Doc. 300).  The United States is still attempting to resolve its claims against Ace Scrap Metal Processors, Inc. and St. Louis Lead Recyclers.

On June 2, 2003, this Court issued a second case management order which lifted the stay on third-party claims (Doc. 306).  This second case management order also set a procedure for pre-contribution litigation settlement negotiations as well as set a procedure for pursuit of contribution claims against parties who declined the contribution plaintiffs' pre-litigation settlement offers.

On May 14, 2004, Honeywell International, Inc., (formerly Allied Signal, Inc.), Johnson Controls, Inc., and Lucent Technologies, Inc., and NL Industries filed a joint contribution complaint against numerous third-party defendants (Doc. 339).  On December 2, 2004, Honeywell International, Inc., Johnson Controls, Inc., and Lucent Technologies,

Inc., filed a separate second amended contribution complaint against a revised list of third-party defendants, including the movants (Doc. 528).

On September 24, 2004, the United States began to again pursue this action against Ace Scrap Metal Processors and St. Louis Lead Recyclers, by filing an initial pre-trial report with the Court (Doc. 501).  In March, 2005, the United States served these two defendants with written discovery.  For the remainder of this Memorandum and Order, the Court will refer to Honeywell International, Inc., Johnson Controls, Inc., and Lucent Technologies, Inc., as the "third-party plaintiffs."

As noted, several of the third-party defendants have filed motions for a determination that SREA operates to exempt them from liability from this matter.  These motions are discussed below.

## II.    **Applicable Statutes.**

Section 107 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, (CERCLA), states that:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section --
> $$* * *$$
>> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by another other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
>>
>> (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened

release which causes the incurrence of response costs, of a hazardous substance, shall be liable for –

> (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan; [and]

> (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan[.]

*42 U.S.C. § 9607.*

In addition, Section 113(f)(1) of CERCLA states:

> (1)   Contribution.

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title.  Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law.  In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate . . .

*42 U.S.C. § 9613(f)(1).*

Section 113(f)(3)(B) of CERCLA states:

> (B) A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not a party to a settlement referred to in paragraph (2) [resolution of liability to the United States or a State in an administrative or judicially approved settlement.]

*42 U.S.C. § 9613(f)(3)(B).*

On November 29, 1999, CERCLA was amended when President Clinton signed the Superfund Recycling Equity Act (SREA), Pub. L. No. 106-113, 113 Stat. 1536, 1501A-599 (1999), (codified at 42 U.S.C. § 9627) (2004).

Specifically, Section 127(a) of SREA provides as follows:

(a) Liability clarification

> As provided in subsections (b), (c), (d), and (e) of this section, a person who arranged for recycling or recyclable material [as defined by SREA] shall not be liable under Sections 9607(a)(3) and 9607(a)(4) of this title with respect to such material.

*42 U.S.C. § 9627(a).*

Section 127(i) of SREA, however, also states:

(i)     Effect on pending or concluded actions.

> The exemptions provided in this section *shall not affect* any concluded judicial or administrative action or *any pending judicial action initiated by the United States* prior to enactment of this section.

*42 U.S.C. §9627(i) (emphasis added).*


III.    **Discussion.**

The Southern District of Ohio has had occasion to address a situation somewhat similar to the case at bar in *United States v. Atlas Lederer Co.*, 97 F.Supp.2d 830 (S.D.Ohio 2000). In *Atlas Lederer*, the United States filed suit against Livingston Company under CERCLA § 107(a)(3). Livingston Company had sold old batteries to another company intending to recycle the lead inside of the batteries. *Atlas Lederer Co.*, 85 F.Supp.2d at 831. Based on Livingston's alleged liability under section CERCLA § 107(a)(3), other parties

sought contribution from it, pursuant to CERCLA § 113(f). *Atlas Lederer*, 97 F.Supp.2d at 831 n. 2. The Ohio district court held that SREA § 127 did not apply to "any pending judicial action initiated by the United States prior to" the enactment of SREA. *Atlas Lederer*, 97 F.Supp.2d at 833. *Atlas Lederer* concluded that the action before it constituted in its entirety "a judicial action" commenced by the United States and therefore, the SREA defense did not apply. *Id.* Thus, according to *Atlas Lederer*, a pending judicial action brought by the United States would encompass any later cross-claims and third-party claims of contribution. *Id.* In addition, *Atlas Lederer* concluded that it would be incorrect to allow the United States to pursue a CERCLA action against some defendants, but preclude them from seeking contribution stating that, "Such a policy would punish the Respondent Group for accepting responsibility and settling with the Government." *Id.*

Movants argue that this Court's reliance upon *Atlas Lederer* is inappropriate. First, they argue that *Atlas Lederer* is distinguishable because in *Atlas Lederer*, the defendant had been sued directly by the United States prior to the enactment of SREA. Here, movants argue that they have never been sued by the United States, rather, they have been sued by the third-party plaintiffs. Movants argue that the action against them is not part of a pending action by the United States, rather, it is an independent action for contribution by the third-party plaintiffs. Movants further argue that at the time SREA was enacted, the action against them was not "pending" as they were not brought into the case until May 2004. Movants also argue that when they *were* brought into this action, the United States had already settled

8

its claims with the third-party plaintiffs, thus, the action by the United States was no longer "pending."[1]

The Court is aware that *Atlas Lederer* is distinguishable from this matter because the defendant in *Atlas Lederer* had been sued directly by the United States before SREA was enacted. This distinction, as shown below, is irrelevant. This Court has independently reviewed the relevant statutory language and legal principles applied in *Atlas Lederer* and is persuaded that SREA § 127(i) bars the SREA's defenses in this case.

When interpreting statutory language, the United States Courts of Appeal for the Seventh Circuit has noted that, "The cardinal rule of statutory interpretation is that courts 'must first look to the language of the statute and assume that its plain meaning accurately expresses the legislative purpose.'" *U.S. v. Miscellaneous Firearms, Explosives, Destructive Devices and Ammunition,* 376 F.3d 709, 712 (7th Cir. 2004) (*citing Grzan v. Charter Hosp. of Northwest Ind.*, 104 F.3d 116, 122 (7th Cir.1997)). To ascertain whether the meaning of statutory language is plain or ambiguous, district courts must look to the specific language at issue, the context in which the language is used, and the broader context of the statute as a whole. *U.S. v. Miscellaneous Firearms,* 376 F.3d at 712 (*citing Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). There are two occasions when this Court may look beyond the

---

[1]Movants also argue that an action is "commenced" when the complaint is filed and that under Federal Rule of Civil Procedure 15, adding a party does not "relate back" to the original filing of the complaint. Here, however, movants were not brought in by an amended complaint, rather they were brought in by a third-party complaint. Accordingly, the relation-back doctrine of Federal Rule of Civil Procedure 15 does not apply.

express language of a statute to effectuate Congressional intent:  where the statutory language is ambiguous; and where a literal interpretation would thwart the purpose of the over-all statutory scheme or lead to an absurd result. *United States v. Tex-Tow, Inc.,* 589 F.2d 1310, 1313 (7th Cir. 1978) (*citing International Telephone and Telegraph Corporation v. General Telephone & Electronics Corporation*, 518 F.2d 913, 917-918 (9th Cir. 1975)).  A court must not construe a statute in a way that makes words or phrases meaningless, redundant, or superfluous. *U.S. v. Miscellaneous Firearms,* 376 F.3d at 712 (*citing Welsh v. Boy Scouts of America*, 993 F.2d 1267, 1272 (7th Cir.1993)).

Here, movants' arguments ignore the plain meaning of "pending judicial action." Federal Rule of Civil Procedure 2 states that, "There shall be one form of action to be known as 'civil action.'" *Fed.R.Civ.Proc. 2.*  The term "civil action" refers to the entire civil proceeding, including all component 'claims' and 'cases' within that proceeding. *Baiker-McKee, Federal Civil Rules Handbook* 151 (2005).  "In federal practice, the terms 'case' and 'action' refer to the same thing, i.e., the entirety of a civil proceeding, which necessarily includes any third-party claims." *Nolan v. Boeing Co.*, 919 F.2d 1058, 1066 (5th Cir. 1990).  *See also Factory Mutual Insurance Company v. Bobst Group USA, Inc.*, 392 F.3d 922, 944 (7th Cir. 2004) ("Contribution claims not only overlap but also *depend on* the principal claims in the suit.  There can be no contribution without established underlying liability); and *Atlas Lederer Co.*, 97 F.Supp.2d at 833 (a civil "action" includes "the entirety of a civil proceeding, which necessarily includes any third-party claims")

(*citing Ginett v. Computer Task Group, Inc.,* 962 F.2d 1085, 1093 (2nd Cir. 1992); and *Nolan v. Boeing Co.*, 919 F.2d 1058, 1066 (5th Cir. 1990), *cert. denied*, 499 U.S. 962 (1991)).

As to the pendency of an action, the word "pending" is defined as "[a]waiting an occurrence or conclusion of an action . . ." BLACK'S LAW DICTIONARY, 6th Ed., p.1134 (1990). "Thus, an action or suit is 'pending' from its inception until the rendition of final judgment." *Id.* Here, no final judgment was entered as of November 29, 1999, thus, the action was pending at SREA's enactment. Accordingly, the plain meaning of SREA § 127(i)'s language that it *"*shall not affect any . . . pending judicial action initiated by the United States prior to enactment of this section" is simply that SREA's exemptions shall not affect an ongoing judicial action that was filed by the United States prior to November 29, 1999. Absent an indication that a contrary definition of "action" or "pending" should be applied, (from either the specific statutory language at issue, the context in which the language is used, or the broader context of the statute as a whole), the Court must refuse to do so. Upon review of the statutory language, its context, and the broader context, the Court finds no such contrary indication. Based upon the plain meaning of § 127(i), the SREA exemptions do not apply to this case.

Movants also argue that *Atlas Lederer,* when concluding that "actions" may include many claims, including third-party claims, inappropriately relied upon case law that interpreted the Foreign Sovereign Immunities Act and Federal Rule of Civil Procedure 54(b), rather than CERCLA or SREA. The Court does not find, and the movants do not identify, any principled reason to ascribe one meaning to the word "action" for the purposes of one

11

statute, and a different meaning for the purposes of interpreting another statute.  As noted, generally in the law, an "action" refers to the entire civil proceeding, including all component 'claims' and 'cases' within that proceeding.  Absent a specific definition of "action" in a given statute, construing the word "action" differently for different statutes would most certainly produce absurd results.

Movants argue further that *Atlas Lederer* was wrongly decided because it ignores Congress' intent.  Movants point to *Gould v. A.M. Battery,* 232 F.3d 162 (3rd Cir. 2000), and *United States v. Mountain Metal Company*, 137 F. Supp. 2d 1267 (N.D. Ala. 2001), for the proposition that courts have made conflicting statements as to whether SREA § 127(i) applies to claims brought by private parties in a lawsuit initially brought by the United States.  According to movants, where two reasonable but conflicting interpretations of language exist, the Court should look to legislative history to guide its interpretation.  As evidence that the legislative history and Congressional intent indicate that private actions are ended by SREA, movants point to the following statement by Senator Trent Lott:

> Congress intends that any third party action or joinder of defendants brought by a private party shall be considered a private party action, regardless of whether or not the original lawsuit was brought by the United States.

*145 Cong. Rec. S14986-03, S15050 (November 19, 1999).*

Initially, the Court notes, that *Gould v. A.M. Battery,* 232 F.3d 162 (3rd Cir. 2000), and *United States v. Mountain Metal Company*, 137 F. Supp. 2d 1267 (N.D. Ala. 2001) involve actions that were initiated by private parties, not by the United States, and are therefore

inapposite.  Furthermore, as noted, the cardinal rule of statutory interpretation in this circuit is that courts 'must first look to the language of the statute and assume that its plain meaning accurately expresses the legislative purpose.' *U.S. v. Miscellaneous Firearms,* 376 F.3d at 712 (7th Cir. 2004) (*citation omitted)*.  When interpreting a statute, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (*citing United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241-42 (1989); *United States v. Goldenberg*, 168 U.S. 95, 102-103(1897); *Oneale v. Thornton*, 6 Cranch 53, 68, 3 L.Ed. 150 (1810)).  "When we find the terms of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete, except in 'rare and exceptional circumstances.'" *Rubin v. United States*, 449 U.S. 424, 430 (1981) (*quoting TVA v. Hill*, 437 U.S. 153, 187 n. 33 (1978)).

As identified, there are two occasions in this circuit when a court may look beyond a statute's express language to effectuate Congressional intent:  where the statutory language is ambiguous; and where a literal interpretation would thwart the purpose of the over-all statutory scheme or lead to an absurd result.  *Tex-Tow*, 589 F.2d at 1313.  As this Court has already discussed, looking at SREA's plain language, the Court finds no ambiguity in § 127(i).  As to the second occasion, (i.e., where a literal interpretation would thwart the purpose of the over-all statutory scheme or lead to an absurd result), the Court finds that a literal interpretation of SREA § 127(i) would not thwart the purpose of CERCLA or SREA or otherwise lead to an absurd result.  Finding that SREA's exemptions do not apply to this case does not thwart the purpose of CERCLA or SREA, rather it merely limits SREA's

exemptions.  The Court's interpretation merely limits SREA's exemptions to actions that

were originally initiated by private parties, and to actions filed by the United States after

November 9, 1999.  In addition, the Court's finding furthers CERCLA's purpose of allowing

parties who have settled their claims to seek contribution under *42 U.S.C. § 9613(f)*.  Finally,

even if the Court found it necessary to look beyond the statutory language of SREA §

127(i), the Court does not find Senator Lott's statement to be a conclusive indicator of

Congressional intent.  Specifically, Senator Daschle made the following statement that

contradicts Senator Lott:

> MR. DASCHLE: Mr President, I take this opportunity to correct an inadvertent but significant error in the CONGRESSIONAL RECORD of November 19, 1999 . . . It concerns a statement submitted for the RECORD by Senator LOTT . . . regarding the Superfund Recycling Equity Act . . . That statement erroneously was attributed to both Senator LOTT and me. *In fact, the statement did not then and does not now reflect my understanding of the Superfund recycling amendments.*
>
> I make this clarification at the earliest opportunity, in order to minimize the possibility of any mistaken reliance on the statement as the consensus view of two original cosponsors, *particularly with respect to the availability of relief in pending cases.*  It is not.
>
> The recycling amendments were passed as part of the end of year appropriations process and did not have the benefit of hearings, debates, or substantive committee consideration . . . Thus, there is no conference report, and there are no committee reports or hearing transcripts, to guide interpretation of the bill.
>
> ***

14

> To the extent the Committee Report does not address a particular provision of the recycling amendments, the Committee may very well have chosen to be silent on the point. *With respect to such provisions, the plain language of the statute must be our guide.*
>
> ***
>
> As usual, it will be for the courts to resolve questions of interpretation on a case-by-case basis, applying the bill to a wide range of potential factual situations.

*146 Cong. Rec. S76-02* (January 26, 2000) (*emphasis added*).

Based upon Senator Lott's statement, it appears that there was no uniform Congressional intent as to the meaning of "any pending judicial action initiated by the United States . . ." *42 U.S.C. 9627 (i).*

The movants rely on *United States v. Mountain Metal Company*, 137 F. Supp.2d 1267 (N.D. Ala. 2001); *Gould v. A.M. Battery,* 232 F.3d 162 (3rd Cir. 2000); *Morton International v. A.E. Staley*, 106 F.Supp.2d 737 (D.C.N.J. 2000); and *Department of Toxic Substance v. Interstate Non Ferrous Corporation*, 99 F.Supp.2d 1123 (E.D.Cal. 2000), for the proposition that SREA must be given retroactive and retrospective application. Each of these cases, however, involve actions that were initiated by private parties rather than the United States and are therefore inapposite. *Atlas Lederer* is more analogous to the case at bar than these authorities. Even *Mountain Metal,* cited by the movants, recognized that it was clearly distinguishable from *Atlas Lederer* by stating:

> This present situation is *not* like *United States v. Atlas Lederer Co.*, 97 F.Supp.2d 830 (S.D.Ohio 2000), where the United States sued certain defendants under CERCLA and the defendant companies filed cross-claims

15

and third-party claims against other companies for contribution.  In that case, unlike the present case, the private party claims were asserted in the same "action" as the action filed by the United States.

*United States v. Mountain Metal Company*, 137 F. Supp.2d at 1279 (*citation omitted*) (*emphasis added*).

Finally, movants argue that *Atlas Lederer* was wrongly decided because it rewards failure to cooperate and settle with the United States.  This sword, however, cuts both ways.  As noted in *Atlas Lederer,* to allow the United States to pursue a CERCLA action against some defendants, but then preclude those defendants from seeking contribution "would punish the Respondent Group for accepting responsibility and settling with the Government." *Atlas Lederer*, 97 F.Supp.2d at 833.  The Court recognizes that the United States' consent decree with the third-party plaintiffs was lodged before SREA's enactment.  As noted, however, Section XXXIV of the consent decree clearly contemplated that the third-party plaintiffs, as settling defendants, would be reimbursed for a certain amount of third-party contributions.  Under these circumstances, and at this point, allowing movants to utilize the SREA defenses would clearly punish the third-party plaintiffs for taking responsibility in this action, and for cooperating and for settling with the United States.  Accordingly, movants' argument in this regard is to no avail.

To summarize, SREA § 127(i) provides that:

> (i)   Effect on pending or concluded actions.
>
> The exemptions provided in this section *shall not affect . . . any pending judicial action initiated by the United States* prior to enactment of this section.

16

*42 U.S.C. §9627(i) (emphasis added).*

When interpreting a statute, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank,* 503 U.S. 249 at 253-54 (*citations omitted).* Upon review of Section 127(i)'s plain language, the context in which the language is used, and the broader context of the statute as a whole, the Court concludes that Section 127(i) means what it says:  The SREA exemptions shall not apply to a pending judicial action initiated by the United States before November 29, 1999. Because this is such an action, (i.e., an action that was initiated by the United States on July 31, 1991), the SREA exemptions do not apply.

III.    **Summary.**

The motions to determine the applicability of the Superfund Recycling Equity Act (SREA) filed by A. Miller & Company (Doc. 601), Bell City Battery (Doc. 602), and Nikko Materials USA, Inc. (Doc. 611) are **DENIED**.  The motion for summary judgment based on SREA (Doc. 607) is **DENIED**.  The motion for a hearing (Doc. 608) is **MOOT**.

**IT IS SO ORDERED.**

**DATED:  May 4, 2005.**

*s/ James L. Foreman*
**DISTRICT JUDGE**

17