IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

**FILED**

SEP 2 5 2006

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
BENTON OFFICE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil No. 91-00578-JLF |
| | ) |
| NL INDUSTRIES, INC., <u>et al</u>., | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| CITY OF GRANITE CITY, <u>et al</u>., | ) |
| | ) |
| Intervenor-Defendants. | ) |

<u>CONSENT DECREE</u>

# TABLE OF CONTENTS

I.      BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.    PARTIES BOUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

IV.     DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

V.      REIMBURSEMENT OF RESPONSE COSTS . . . . . . . . . . . . . . . . . . . . . . . .  9

VI.     CIVIL PENALTY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

VII.    FAILURE TO COMPLY WITH REQUIREMENTS OF CONSENT
        DECREE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

VIII.   COVENANT NOT TO SUE BY PLAINTIFF . . . . . . . . . . . . . . . . . . . . . . . .12

IX.     COVENANT NOT TO SUE BY SETTLING DEFENDANT. . . . . . . . . . . . . 13

X.      EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION . . . . . . . . . . 14

XI.     RETENTION OF RECORDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

XII.    NOTICES AND SUBMISSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

XIII.   RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

XIV.    INTEGRATION/APPENDIX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

XV.     LODGING AND OPPORTUNITY FOR PUBLIC COMMENT . . . . . . . . . . . 18

XVI.    EFFECTIVE DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

XVII.   SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## I. BACKGROUND

A.  Plaintiff, the United States of America, on behalf of the Administrator of the United States

Environmental Protection Agency ("EPA"), filed the Complaint in this action on July 31, 1991,

against eleven (11) defendants, including Ace Scrap Metal Processors, Inc., a/k/a Ace Metal

Processors, Inc., a Missouri corporation ("Settling Defendant"), pursuant to Sections 106 and 107

of the Comprehensive Environmental Response, Compensation, and Liability Act, as amended

("CERCLA"), 42 U.S.C. §§ 9606 and 9607.

B.  The Complaint filed by the United States in this action seeks: (1) injunctive relief to compel

defendants to undertake remedial action at the NL Industries Superfund Site in Granite City,

Madison, and Venice, Illinois (the "Site," as defined in Section IV, below) in accordance with an

Administrative Order issued by EPA pursuant to Section 106 of CERCLA, 42 U.S.C. § 9606; (2)

recovery of costs which the United States has incurred in responding to releases and threatened

releases of hazardous substances at the Site; (3) a declaration that defendants will be liable for

additional costs that may be incurred by the United States in responding to releases or threatened

releases of hazardous substances at the Site; and, (4) civil penalties and punitive damages for

defendants' failure to comply with the Administrative Order.

C.  Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National

Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register

on June 10, 1986, 51 Fed. Reg. 21054.

D.  In response to a release or a substantial threat of a release of hazardous substance at or from

the Site, in May 1985 NL Industries, Inc. commenced a Remedial Investigation and Feasibility

Study ("RI/FS") for the Site pursuant to 40 C.F.R. § 300.430.

- 1 -

E.  NL Industries, Inc. issued a Feasibility Study ("FS") Report in August 1989. On January 10,

1990, EPA issued an FS addendum. The FS was completed on March 30, 1990.

F.  Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the

completion of the FS and of the proposed plan for remedial action, in a major local newspaper of

general circulation. EPA provided an opportunity for written and oral comments from the public

on the proposed plan for remedial action. A copy of the transcript of the public meeting is

available to the public as part of the administrative record upon which the Regional

Administrator based the selection of the response action.

G.  The decision by EPA on the remedial action to be implemented at the Site is embodied in a

Record of Decision ("ROD"), executed on March 30, 1990, on which the State has given its

concurrence. The ROD includes a responsiveness summary to the public comments. Notice of

the final plan was published in accordance with Section 117(b) of CERCLA.

H.  On June 25, 1990, EPA initiated a 60 day period of negotiations regarding implementation of

the remedy in the ROD by sending special notice letters, pursuant to Section 122(e) of CERCLA,

42 U.S.C. § 9622(e), to the Settling Defendant as well as nearly 300 other potentially responsible

parties ("PRPs"). In accordance with the National Contingency Plan ("NCP") and Section

121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State of Illinois (the

"State") of negotiations with PRPs regarding the implementation of the remedy and provided the

State with an opportunity to participate in such negotiations. At the conclusion of the 60 day

negotiation period, EPA had not reached agreement with the PRPs regarding implementation of

the remedy.

-2-

I. In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the Department of Interior, as Federal natural resource trustee, on June 25, 1990 of negotiations with potentially responsible parties regarding the release of hazardous substances that may have resulted in injury to the natural resources under Federal trusteeship, and encouraged the participation of such trustee in the negotiations.

J. On November 27, 1990, EPA issued a unilateral administrative order, pursuant to Section 106 of CERCLA, 42 U.S.C. § 9606, to various parties, including the Settling Defendant.

K. On October 14, 1994, EPA reopened the Administrative Record, providing a new opportunity for public comment on lead cleanup levels for residential soils at the Site. After evaluating all public comments and preparing an extensive response, EPA issued on September 14, 1995, a decisional document/explanation of significant differences ("DD/ESD") supplementing the original ROD. The DD/ESD set forth EPA's responses to public comments. In the DD/ESD, EPA reaffirmed its decision to require excavation of residential soils containing at least 500 ppm lead. In addition, EPA modified the remedy by adding a requirement that the contaminated ground water at the former NL facility be contained because additional testing had found contamination not identified in the RI/FS.

L. In 1999, EPA reached a settlement with a group of six generator defendants ("Settling Generator Defendants"), under which the Settling Generator Defendants agreed to complete implementation of the remedy, reimburse a portion of the response costs previously incurred by the United States in connection with the Site, make payment of oversight costs incurred in connection with the remedy selected in the ROD and DD/ESD for the Site, and resolve claims for alleged violations of the UAO by paying a civil penalty of $400,000 and completing a

- 3 -

supplemental environmental project consisting of a $2,000,000 lead paint abatement program in Madison County.

M. The United States has reviewed financial information submitted by Settling Defendant to determine whether Settling Defendant is financially able to pay response costs incurred and to be incurred at the Site. Based upon this financial information, the United States has determined that Settling Defendant is able to pay the amounts specified in Sections V and VI.

N. The Settling Defendant filed an answer and affirmative defenses to the Complaint denying any and all liability. The Settling Defendant does not admit any liability to the Plaintiff or any other party arising out of the transactions or occurrences alleged in the Complaint, nor does it acknowledge that the release or threatened release of hazardous substance(s) at or from the Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment. The participation of the Settling Defendant in this Consent Decree should not be considered an admission of liability for any purpose, and the fact of such participation by the Settling Defendant shall not be admissible against such Settling Defendant at any judicial or administrative proceeding, except in an action or proceeding brought by the United States to enforce the terms of this Consent Decree.

O. This Consent Decree is made and entered into by and between Plaintiff, the United States of America, and Settling Defendant. The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

- 4 -

## II. JURISDICTION

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. §§ 9606, 9607 and 9613(b). This Court also has personal jurisdiction over the Settling Defendant. Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendant waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this District. Settling Defendant shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III. PARTIES BOUND

2. This Consent Decree applies to and is binding upon the United States, and upon Settling Defendant and its successors and assigns. Any change in ownership or corporate status of Settling Defendant, including but not limited to, any transfer of assets or real or personal property, shall in no way alter Settling Defendant's responsibilities under this Consent Decree.

## IV. DEFINITIONS

3. Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in any appendix attached hereto, the following definitions shall apply:

a. "Administrative Order" means the Administrative Order EPA issued to Settling Defendant and other entities not a party to this settlement on November 27, 1990, pursuant to Section 106 of CERCLA, 42 U.S.C. § 9606.

b. "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9601 et seq.

- 5 -

c. "Certification of Completion" shall mean EPA's certification pursuant to Section 122(f)(3) of CERCLA, 42 U.S.C. § 9622(f)(3), that remedial action has been completed at the Site.

d. "Consent Decree" or "Decree" shall mean this Consent Decree and any appendix attached hereto. In the event of conflict between this Decree and any appendix, this Decree shall control.

e. "Day" shall mean a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal Holiday, the period shall run until the close of business of the next working day.

f. "Decision Document/Explanation of Significant Differences" or "DD/ESD" shall mean the document signed by the Administrator on September 29, 1995 supplementing the Record of Decision.

g. "DOJ" shall mean the United States Department of Justice and any successor departments, agencies or instrumentalities of the United States.

h. "EPA" shall mean the United States Environmental Protection Agency and any successor departments, agencies or instrumentalities of the United States.

i. "EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

j. "Future Response Costs" shall mean all response costs incurred by the United States subsequent to the entry of this Consent Decree, including, but not limited to, direct and indirect costs incurred in remediating waste at the Site, reviewing or developing plans, reports or other items pursuant to this Consent Decree or any other consent decree relating to liability for

- 6 -

releases or threatened releases of hazardous substances at the Site, or otherwise implementing, overseeing, or enforcing any other consent decree relating to liability for releases or threatened releases of hazardous substances at the Site, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, attorneys fees and any monies paid to secure access and/or to secure institutional controls, including the amount of just compensation.

k. "Interest" shall mean interest at the current rate specified for interest on investments of the Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).

l. "National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substance Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, including but not limited to any amendments thereto.

m. "Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral or an upper or lower case letter.

n. "Parties" shall mean the United States and the Settling Defendant.

o. "Past Response Costs" shall mean all costs, including but not limited to direct and indirect costs, that EPA or DOJ on behalf of EPA has paid at or in connection with the Site through the date of entry of this Consent Decree, plus accrued Interest on all such costs through such date.

p. "Plaintiff" shall mean the United States.

q. "Record of Decision" or "ROD" shall mean the Record of Decision signed by the Regional Administrator for Region V of EPA on March 30, 1990, for the Site.

r.  "Remedial Action" shall mean the response actions at the Site set forth in the March 30, 1990, Record of Decision and the September 29, 1995, DD/ESD.

s.  "Section" shall mean a portion of this Consent Decree identified by a roman numeral.

t.  "Settling Defendant" shall mean Ace Scrap Metal Processors, Inc., a/k/a Ace Metal Processors, Inc., a Missouri corporation.

u.  "Site" shall mean the NL Industries/Taracorp Superfund Site located in Granite City, Madison, and Venice, Illinois, as depicted in Appendix A of this Consent Decree, and additional residential areas where lead has come to be located in concentrations greater than 500 parts per million as a result of smelting operations conducted at the former lead smelter located at 16th Street and Cleveland Boulevard, Granite City, Illinois, as identified in the remedial design. The Site includes the property, not including any buildings, currently owned or operated by Metallico, Inc. located at 16th Street and Cleveland Boulevard, Granite City, Illinois; properties, not including buildings, adjacent to the Metallico property, currently owned or operated by the First Granite City National Bank Trust No. 454 (now known as the Magna Trust Company), Rich Oil Company, and BV&G Transport Company (formerly Tri-City Trucking); approximately 100 square blocks of residential property as depicted in Appendix A; and certain fill locations in Granite City, Madison, and Venice, Illinois and adjacent areas, as depicted in Appendix A.

v.  "State" shall mean the State of Illinois.

w.  "United States" shall mean the United States of America, including it departments, agencies and instrumentalities.

- 8 -

## V.  REIMBURSEMENT OF PAST RESPONSE COSTS

4.  Payment of Past Response Costs to the EPA Hazardous Substance Superfund

a. Settling Defendant shall pay to the United States the sum of $580,000.00, plus Interest, as reimbursement for Past Response Costs, as follows: (i) within 30 days of entry of this Consent Decree, Settling Defendant shall pay to the EPA Hazardous Substance Superfund the amount of $205,000.00, plus an additional sum for Interest on that amount calculated from the date of entry of this Consent Decree through the date of payment; (ii) Settling Defendant shall pay an additional $375,000.00 over a four-year period, in annual installments of $93,750.00 each, to the EPA Hazardous Substance Superfund, beginning on the first anniversary of its initial payment, plus an additional sum for Interest on that amount calculated from the date of entry of this Consent Decree through the date of payment; (iii) all payments required pursuant to this Paragraph 4 shall be made by FedWire Electronic Funds Transfer ("EFT" or wire transfer) to the DOJ account in accordance with current electronic funds transfer procedures, referencing USAO File Number 1991V00303, the EPA Region and Site/Spill ID Number 05W8, and DOJ Case Number 90-11-3-608A.  Payments required by this Paragraph 4 shall be made in accordance with instructions provided to Settling Defendant by the Financial Litigation Unit of the United States Attorney's Office for the Southern District of Illinois following lodging of the Consent Decree. Any payments received by the Department of Justice after 4:00 P.M. (Eastern Time) will be credited on the next business day. Settling Defendant shall send notice that such payment has been made to the United States as specified in Section XIII (Notices and Submissions) and to EPA the Region V Financial Management Officer at U.S. EPA Region V, Attn: Superfund Accounting, P.O. Box 70753, Chicago, IL  60673.

## VI. CIVIL PENALTY

5.      Within 30 days of the date this Consent Decree is entered by the Court, Settling Defendant shall pay to the EPA Hazardous Substance Superfund a civil penalty of $20,000.00 for failure to comply with the Administrative Order, in accordance with instructions to be provided by the Financial Litigation Unit of the United States Attorney's Office for the Southern District of Illinois. Settling Defendant shall send notice that such payment has been made to the United States as specified in Section XIII (Notices and Submissions).

## VII. FAILURE TO COMPLY WITH REQUIREMENTS OF CONSENT DECREE

6.      Interest on Late Payments. In the event that any payment(s) required by Section V (Reimbursement of Past Response Costs), Section VI (Civil Penalty), or Section VII, Paragraph 7 (Stipulated Penalty), are not received when due, Interest shall continue to accrue on the unpaid balance through the date of payment.

7.      Stipulated Penalty.

        a. If any amounts due to EPA under this Consent Decree are not paid by the required date, Settling Defendant shall pay to EPA as a stipulated penalty, in addition to the Interest required by Paragraph 6, $250 per violation per day that such payment is late for the first 14 days of such noncompliance, and $500 per violation per day that such payment is late thereafter.

        b. Stipulated penalties are due and payable within 30 days of the date of the demand for payment of the penalties by EPA. All payments to EPA under this Paragraph shall be made by certified or cashier's check made payable to "EPA Hazardous Substance Superfund" and shall be sent to:

- 10 -

U.S. Environmental Protection Agency
Superfund Accounting
P.O. Box 70753
Chicago, IL 60673

All payments shall indicate that the payment is for stipulated penalties and shall reference the name and address of the party making payment, the EPA Region and Site Spill ID Number 05W8, USAO File Number 1991V00303, and DOJ Case Number 90-11-3-608A. Copies of check(s) paid pursuant to this Paragraph, and any accompanying transmittal letter(s), shall be sent to EPA and DOJ as provided in Section XIII (Notices and Submissions) and to the EPA Region V Financial Management Officer at U.S. EPA Region V, Attn: Superfund Accounting, P.O. Box 70753, Chicago, IL 60673.

c. Penalties shall accrue as provided in this Paragraph regardless of whether EPA has notified Settling Defendant of the violation or made a demand for payment, but need only be paid upon demand. All penalties shall begin to accrue on the day after complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of correction of the noncompliance or completion of the activity. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

8. If the United States brings an action to enforce this Consent Decree, Settling Defendant shall reimburse the United States for all costs of such action, including but not limited to costs of attorney time.

9. Payments made under Paragraphs 6-8 shall be in addition to any other remedies or sanctions available to Plaintiff by virtue of Settling Defendant's failure to comply with the requirements of this Consent Decree.

- 11 -

## VIII. COVENANT NOT TO SUE BY PLAINTIFF

10. In consideration of the actions that will be performed and the payments that will be made by the Settling Defendant under the terms of the Consent Decree, and except as specifically provided in Paragraph 11, the United States covenants not to sue or to take administrative action against Settling Defendant pursuant to Sections 106 and 107(a) of CERCLA and Section 7003 of RCRA relating to the Site. With respect to present and future liability, these covenants not to sue shall take effect upon the receipt by EPA of the payments required by Section V. These covenants not to sue are conditioned upon the complete and satisfactory performance by Settling Defendant of its obligations under this Consent Decree. These covenants are also conditioned upon the veracity and completeness of the financial information provided to EPA by Settling Defendant. If the financial information is subsequently determined by EPA to be false or, in any material respect, inaccurate, Settling Defendant shall forfeit all payments made pursuant to this Consent Decree and these covenants not to sue and the contribution protection in Paragraph 14 shall be null and void. Such forfeiture shall not constitute liquidated damages and shall not in any way foreclose the United States' right to pursue any other causes of action arising from Settling Defendant's false or materially inaccurate information. These covenants not to sue extend only to the Settling Defendant and do not extend to any other person.

11. General reservations of rights. The covenants not to sue set forth above do not pertain to any matters other than those expressly specified in Paragraph 10. The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendant with respect to all other matters, including but not limited to, the following:

- 12 -

(1) claims based on a failure by Settling Defendant to meet a requirement of this Consent Decree;

(2) liability, based upon Settling Defendant's ownership or operation of the Site, or upon Settling Defendant's transportation, treatment, storage, or disposal, or the arrangement of the transportation, treatment, storage, or disposal, of a hazardous substance or a solid waste at or in connection with the Site, after signature of this Consent Decree by Settling Defendant;

(3) liability arising from the past, present, or future disposal, release, or threat of release of Waste Materials outside of the Site;

(4) liability for damages for injury to, destruction of, or loss of natural resources;

(5) criminal liability; and

(6) liability, if any, for violations of federal or state law which occur during or after implementation of the Remedial Action.

## IX.  COVENANTS BY SETTLING DEFENDANT

12.  Settling Defendant hereby covenants not to sue and agrees not to assert any claims or causes of action against the United States with respect to the Site or this Consent Decree, including, but not limited to, any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507), under CERCLA §§ 106(b)(2), 107, 111, 112, or 113, or any other provision of law, any claim against the United States, including any department, agency, or instrumentality of the United States pursuant to CERCLA Sections 107 and 113 relating to response costs incurred in connection with the Site, or any claims arising out of response activities at the Site.  Nothing in

- 13 -

this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning

of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

## X. EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION

13. Nothing in this Consent Decree shall be construed to create any rights in, or grant any

cause of action to, any person not a Party to this Consent Decree. Each of the Parties expressly

reserves any and all rights (including, but not limited to, any right to contribution), defenses,

claims, demands, and causes of action which each Party may have with respect to any matter,

transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

14. The Parties agree, and by entering this Consent Decree this Court finds, that Settling

Defendant is entitled, as of the effective date of this Consent Decree, to protection from

contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. §

9613(f)(2), for "matters addressed" in this Consent Decree. The "matters addressed" in this

Consent Decree are response costs incurred or to be incurred by any person, entity, governmental

unit, or party, in responding to the release and threatened release of hazardous substances at the

Site, including, but not limited to Past Response Costs and Future Response Costs.

15. Settling Defendant agrees that, with respect to any suit or claim for contribution

brought by it for matters related to this Consent Decree, it will notify EPA and DOJ in writing no

later than 60 days prior to the initiation of such suit or claim. Settling Defendant also agrees that,

with respect to any suit or claim for contribution brought against it for matters related to this

Consent Decree, it will notify EPA and DOJ in writing within 10 days of service of the complaint

or claim upon it. In addition, Settling Defendant shall notify EPA and DOJ within 10 days of

- 14 -

service or receipt of any Motion for Summary Judgment, and within 10 days of receipt of any

order from a court setting a case for trial, for matters related to this Consent Decree.

16. In any subsequent administrative or judicial proceeding initiated by the United States

for injunctive relief, recovery of response costs, or other relief relating to the Site, Settling

Defendant shall not assert, and may not maintain, any defense or claim based upon the principles

of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses

based upon any contention that the claims raised by the United States in the subsequent

proceeding were or should have been brought in the instant case; provided, however, that nothing

in this Paragraph affects the enforceability of the Covenant Not to Sue by Plaintiff set forth in

Section VIII.

## XI. RETENTION OF RECORDS

17. Until 7 years after the entry of this Consent Decree, Settling Defendant shall

preserve and retain all records and documents now in its possession or control, or which come

into its possession or control, that relate in any manner to response actions taken at the Site or the

liability of any person for response actions conducted and to be conducted at the Site, regardless

of any corporate retention policy to the contrary.

18. After the conclusion of the document retention period in the preceding Paragraph,

Settling Defendant shall notify EPA and DOJ at least 90 days prior to the destruction of any such

records or documents, and, upon request by EPA or DOJ, Settling Defendant shall deliver any

such records or documents to EPA. Settling Defendant may assert that certain documents,

records, or other information are privileged under the attorney-client privilege or any other

privilege recognized by federal law. If Settling Defendant asserts such a privilege, it shall

- 15 -

provide Plaintiff with the following:  1) the title of the document, record, or information; 2) the

date of the document, record, or information; 3) the name and title of the author of the document,

record, or information; 4) the name and title of each addressee and recipient; 5) a description of

the subject of the document, record, or information; and 6) the privilege asserted.  However, no

documents, reports, or other information created or generated pursuant to the requirements of this

or any other consent decree with the United States shall be withheld on the grounds that they are

privileged.  If a claim of privilege applies only to a portion of a document, the document shall be

provided to Plaintiff in redacted form to mask the privileged information only.  Settling

Defendant shall retain all records and documents that it claims to be privileged until the United

States has had a reasonable opportunity to dispute the privilege claim and any such dispute has

been resolved in the Settling Defendant's favor.

     19. By signing this Consent Decree, Settling Defendant certifies individually that, to the

best of its knowledge and belief, it has:

     a. conducted a thorough, comprehensive, good faith search for documents, and

has fully and accurately disclosed to EPA, all information currently in its possession, or in the

possession of its officers, directors, employees, contractors or agents, which relates in any way to

the ownership, operation or control of the Site, or to the ownership, possession, generation,

treatment, transportation, storage or disposal of a hazardous substance, pollutant or contaminant

at or in connection with the Site;

     b. not altered, mutilated, discarded, destroyed or otherwise disposed of any

records, documents or other information relating to its potential liability regarding the Site, after

- 16 -

notification of potential liability or the filing of a suit against the Settling Defendant regarding
the Site; and

        c. fully complied with any and all EPA requests for information regarding the
Site pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and
Section 3007 of RCRA, 42 U.S.C. § 6927.

## XII. NOTICES AND SUBMISSIONS

    20.  Whenever, under the terms of this Consent Decree, notice is required to be given or a
document is required to be sent by one party to another, it shall be directed to the individuals at
the addresses specified below, unless those individuals or their successors give notice of a change
to the other Parties in writing.  Written notice as specified herein shall constitute complete
satisfaction of any written notice requirement of the Consent Decree with respect to the United
States, EPA, DOJ, and Settling Defendant, respectively.

As to the United States:

As to DOJ:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice (DJ # 90-11-3-608A)
P.O. Box 7611
Washington, D.C.  20044-7611

As to EPA:

Larry L. Johnson
Associate Regional Counsel
United States Environmental Protection Agency
Region V
77 West Jackson Blvd.
Chicago, IL 60604

- 17 -

Brad Bradley
EPA Project Coordinator
United States Environmental Protection Agency
Region V
77 West Jackson Blvd.
Chicago, IL 60604

As to Settling Defendant:

John W. Traeger
Gallop, Johnson & Neuman, L.C.
101 South Hanley, Suite 1700
St. Louis, MO 63105

## XIII.  RETENTION OF JURISDICTION

21.  This Court shall retain jurisdiction over this matter for the purpose of interpreting

and enforcing the terms of this Consent Decree.

## XIV.  INTEGRATION/APPENDIX

22.  This Consent Decree and its appendix constitute the final, complete and exclusive

agreement and understanding among the Parties with respect to the settlement embodied in this

Consent Decree.  The Parties acknowledge that there are no representations, agreements or

understandings relating to the settlement other than those expressly contained in this Consent

Decree.  The following appendix is attached to and incorporated into this Consent Decree:

"Appendix A" is the map of the Site.

## XV.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

23.  This Consent Decree shall be lodged with the Court for a period of not less than 30

days for public notice and comment.  The United States reserves the right to withdraw or

withhold its consent if the comments regarding the Consent Decree disclose facts or

considerations which indicate that this Consent Decree is inappropriate, improper, or inadequate. Settling Defendant consents to the entry of this Consent Decree without further notice.

24. If for any reason this Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XVI. EFFECTIVE DATE

25. The effective date of this Consent Decree shall be the date upon which it is entered by the Court.

## XVII. SIGNATORIES/SERVICE

26. Each undersigned representative of the Settling Defendant to this Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the United States Department of Justice certifies that he or she is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally such Party to this document.

27. Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States has notified Settling Defendant in writing that it no longer supports entry of the Consent Decree.

28. Settling Defendant shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree. Settling Defendant hereby agrees to accept service in that manner and to waive the formal service requirements set

forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this

Court, including but not limited to, service of a summons.

SO ORDERED THIS 23 $^{TH}$ DAY OF _September_ 20 06.

_James L. Foreman_

United States District Judge

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States v.</u>
<u>NL Industries, Inc., et al.</u>, Civil No. 91-00578-JLF, relating to the NL Industries Superfund Site.

FOR THE UNITED STATES OF AMERICA

Date: 7/6/06

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

WILLIAM E. COONAN
Assistant United States Attorney
Nine Executive Drive
Suite 300
Fairview Heights, IL 62208
(618) 628-3714

ROBERT W. DARNELL
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611

- 21 -

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States v. NL Industries, Inc., et al.</u>, Civil No. 91-00578-JLF, relating to the NL Industries Superfund Site.

FOR THE UNITED STATES OF AMERICA

Date: 6/20/06

*for* RICHARD C. KARL
Director, Superfund Division
United States Environmental Protection Agency
Region V
77 West Jackson Blvd.
Chicago, IL 60604

LARRY L. JOHNSON
Associate Regional Counsel
United States Environmental Protection Agency
Region V
77 West Jackson Blvd.
Chicago, IL 60604

- 22 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States v.</u> <u>NL Industries, Inc., et al.,</u> Civil No. 91-00578-JLF, relating to the NL Industries Superfund Site.

FOR DEFENDANT ACE SCRAP METAL PROCESSORS, INC.

Date: **5/3/06**          Daryl Abramovitz (Pres.)

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name:   Steve Stone, Esq.

Title:   Legal Counsel

Address:  Stone Leyton & Gershman
7733 Forsythe Ave. Suite 500
St. Louis, Missouri  63105

Appendix A
Site Map



# MAP A

2 MILES

AREA OF DETAIL

LEGEND

- ■ REMOTE FILL AREAS
- ■ INDUSTRIAL AREAS
- □ RESIDENTIAL AREAS  BUFFER ZONE RESIDEN-TIAL AREAS
- 1. NUMERALS DENOTE RING NUMBERS

SPACING BETWEEN CIRCLES IS 1/8 OF A MILE

NOTE: Drawing taken from U.S.G.S. — Granite City, IL—MO and Monks Mound, IL Quadrangles dated 1982 & 1974.

| SCALE | | | FEET |
|---|---|---|---|
| 0 | 2000 | 4000 | |

NL/TARACORP SUPERFUND SITE
SUPPLEMENTAL INVESTIGATION

PROJECT NO.
C3M11Q

**Woodward-Clyde Consultants**
Engineering & sciences applied to the earth & its environment

| DRN. BY: kdw | 7/23/93 | |
|---|---|---|
| DSGN. BY: | 7-30-93 | Site Plan South |
| CHKD. BY: | 8/27/93 | |

FIG. NO.
1-2